IN THE CIRCUIT COURT OF BOLIVAR COUNTY, MISSISSIPPI
FIRST JUDICIAL DISTRICT

WILLIE R. CLENTION                                                          PLAINTIFF

VERSUS                                                           CAUSE NO.: 2019-05

GRAIN SYSTEMS, INC., GSI GROUP, INC.,
REED-JOSEPH INTERNATIONAL, INC.,
TULIP FARMS, INC., TENSAS RIVER FARMS III, LLC,
AND JOHN DOE CORPORATIONS 1-5                                      DEFENDANTS

## COMPLAINT

COMES NOW the Plaintiff, Willie R. Clention, by and through his attorneys, Merkel & Cocke, P.A., and in support of this Complaint, alleges the following:

### PARTIES

1. The Plaintiff, Willie R. Clention, (hereinafter "the Plaintiff") is an adult resident citizen of Bolivar County residing in Benoit, Mississippi.

2. Defendant Grain Systems, Inc., (hereinafter "Defendant Grain Systems") is a manufacturer of a wide variety of corrugated steel storage bins and accessory equipment. Upon information and belief, Defendant Grain Systems is a Delaware corporation with its principal office address of East Illinois Street, P.O. Box 20, Assumption, Illinois 62510-0020, but does business in Mississippi, and may be served with process upon Corporation Service Company, 7716 Old Canton Road, Suite C, Madison, Mississippi 39110.

3. Defendant GSI Group, Inc., (hereinafter "Defendant GSI") is a manufacturer of a wide variety of corrugated steel storage bins and accessory equipment. Upon information and belief, Defendant GSI is a Delaware corporation with a principal office address of East Illinois Street, P.O. Box 20, Assumption, Illinois 62510, but does business in Mississippi, and may be served with process upon The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street,

**EXHIBIT A**

Wilmington, Delaware 19801.

4. Upon information and belief, Defendant Reed-Joseph International, Inc. (hereinafter "Reed-Joseph") is a Delaware corporation with a principal office address of 800 Main Street, Greenville, Mississippi 38701, which may be served with process upon The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. Defendant Reed-Joseph has been involved in the construction of pre-fabricated grain bins on-site for grain producers in the Mississippi Delta Region.

5. Defendant Tulip Farms, Inc. (hereinafter "Defendant Tulip") is an Arkansas for profit corporation that may be served with process upon its registered agent, J. Kirkham Povall, 215 North Pearman Avenue, P.O. Box 1199, Cleveland, Mississippi 38732-1199.

6. Defendant Tensas River Farms III, LLC (hereinafter "Defendant Tensas") is an Arkansas limited liability company that may be served with process upon it registered agent, J. Kirkham Povall, 215 North Pearman Avenue, P.O. Box 1199, Cleveland, Mississippi 38732-1199.

7. Defendant John Doe Corporations 1-5 include any of the named Defendants' subsidiaries, entities, or other companies that were involved with the manufacturing and/or the installation of a grain Auger system, more particularly described below, and/or providing an unsafe Auger to the tenant of the Subject Property, more particularly described below, and any individuals that were involved with the design and installation of the Auger system in question.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction in this case by virtue of §9-7-81 of *Miss. Code Ann.*, as amended. The venue is proper in this Court as the events giving rise to this Complaint occurred and accrued in Bolivar County, Mississippi, as required by §11-11-3 of *Miss. Code Ann.*, as amended.

## FACTUAL STATEMENT

11. Defendants Grain System and GSI designed, manufactured, sold and delivered a corrugated steel grain storage bin and related equipment that included (a) a removable carry-in bin, on top sweep auger and (b) a round tube, under floor unloading auger (collectively herein above and hereinafter "Auger System"), which equipment was installed by Defendant Reed-Joseph in what was commonly described as "Grain Bin 16" that is presently owned by Defendants Tulip and Tensas, but operated by the tenant of Defendants' Tulip and Tensas and the Plaintiff's employer, Satterfield Farms, Inc., (hereinafter "Satterfield") in Benoit, Bolivar County, Mississippi (herein and hereinafter above "Subject Property").

12. The Plaintiff was a general laborer in the employment of Satterfield on the Subject Property.

13. On February 14, 2019, the Plaintiff was shoveling rice into the sweep auger when he slipped and his left foot went into an uncovered and unguarded hole in the floor of Grain Bin 16 and into the round tube, under floor unloading auger under Gain Bin 16. As a result, the Plaintiff lost much of his left foot when it was pulled into the exposed, unguarded round tube, under floor unloading auger.

14. The Auger System was designed and manufactured by Defendants Grain Systems and GSI and installed by Defendant Reed-Joseph with the knowledge that the Auger System would be used in the manner used by the Plaintiff and other employees of its operator. Defendants Tulip and Tensas also had knowledge that the Auger System would be used in the manner used by the Plaintiff and other employees of Satterfield.

3

## THE CLAIMS AGAINST DEFENDANTS GRAIN SYSTEMS AND GSI

### *Count One - Negligence*

15. Defendants Grain Systems and GSI knew, or should have know, in the exercise of ordinary care, that an Auger System, if improperly or defectively designed, was an extremely hazardous and dangerous instrumentality, but in disregard of its duties, these Defendants designed, manufactured, caused, and allowed the Auger System to enter the stream of commerce in an unsafe and defective condition and negligently breached the duties it owed to the Plaintiff by:

(a) Failing to provide appropriate fixed guards/grates on the floor above the round tube, under floor unloading auger as required by general engineering standards;

(b) Failing to provide the appropriate fixed and/or portable emergency stop buttons, pull cords, limit switches, or other similar emergency stop devices near the Auger System within access of those using the same as required by general engineering standards;

(c) Failing to provide the Auger System with interlocks, which would disable the Auger System if the floor grates were not fastened in place;

(d) Failing to provide the proper directions, instructions, and warnings as to the safe operation of the Auger System;

(e) Failing to make the inside of Grain Bin 16 inaccessible when in operation by the use of interlocks on the door;

(f) Failing to warn by a statement on Grain Bin 16 of the danger encountered if one entered while in operation;

(g) Failing to warn of the presence of the under floor unloading auger immediately below the floor of Grain Bin 16 and to avoid any openings in the subfloor of Grain Bin 16; and

(h) Failure to comply with state and federal regulations and/or laws.

4

*Count Two - Breach of Express Warranties by Affirmation,
Promise, Description, Sample*

16. Defendants Grain Systems and GSI impliedly warranted to the predecessors of Satterfield and their employees that Grain Bin 16 and Auger System as installed was safe to be used for the transfer of rice.

17. Further, an express warranty was made by Defendants Grain Systems and GSI that the Auger System was designed, manufactured and, as installed, could be safely used by operators for the transferring of rice, pursuant to *Miss Code Ann.* § 75-2-313, as amended. This warranty was breached when the Auger System was provided without:

   (a) Failing to provide appropriate fixed guards/grates on the floor above the round tube, under floor unloading auger as required by general engineering standards;

   (b) Failing to provide the appropriate fixed and/or portable emergency stop buttons, pull cords, limit switches, or other similar emergency stop devices near the Auger System within access of those using the same as required by general engineering standards;

   (c) Failing to provide the Auger System with interlocks, which would disable the Auger System if the floor grates were not fastened in place;

   (d) Failing to provide the proper directions, instructions, and warnings as to the safe operation of the Auger System;

   (e) Failing to make the inside of Grain Bin 16 inaccessible when in operation by the use of interlocks on the door;

   (f) Failing to warn by a statement on Grain Bin 16 of the danger encountered if one entered while in operation;

   (g) Failing to warn of the presence of the under floor unloading auger immediately below the floor of Grain Bin 16 and to avoid any openings in the subfloor of Grain Bin 16; and

   (h) Failure to comply with state and federal regulations and/or laws.

5

*Count Three - Breach of Implied Warranty for Merchantability*

18. Defendants Grain Systems and GSI is a merchant selling products such as the Auger System. A warranty that the goods shall be merchantable and fit for their intended purpose is implied in a contract for their sale, pursuant to *Miss. Code Ann.* §75-2-314(1). Therefore, implied warranties of merchantability and fitness for purpose are implied in the contract for the purchase and sale of the Auger System. The Auger System for reasons stated above, failed such warranties in that it was not fit to safely perform the purposes of augers and being unsafe or dangerous was not merchantable.

*Count Four - Breach of Implied Warranty of Fitness for Particular Purpose*

19. At the time of the purchase of the Auger System, Defendants Grain Systems and GSI knew or had reason to know that the Auger System was being purchased for the particular purpose of transferring rice safely in the configuration that it was incorporated out of Grain Bin 16 and its employees were relying on Defendants Grain Systems' and GSI's skill and judgment to select and furnish a suitable Auger System. Therefore, there was an implied warranty that the Auger System would be fit for such purpose, pursuant to *Miss. Code Ann.* §75-2-315, as amended. This warranty for reasons previously asserted was breached when the Auger System was provided in a dangerous and defective conditions.

*Count Five - Strict Liability in Tort*

20. Defendants Grain Systems and GSI manufactured the Auger System in question.

21. Defendants Grain Systems and GSI is in the business of manufacturing and selling augers.

22. Defendants Grain Systems and GSI sold the Auger System in question to the

predecessors of Satterfield.

23. Defendants Grain Systems and GSI knew that the Auger System in question would be used to transfer rice under the conditions that existed when it was incorporated into Grain Bin 16.

24. At the time the product left the control of the manufacturers, it was defectively designed and was accordingly unreasonably dangerous to those who would be using the Auger System, including the Plaintiff for the reasons set forth hereinabove.

25. When the Plaintiff was working around the Auger System in question, it was in the same condition it was in when it left Defendants Grain Systems' and GSI's control.

*Count Six - Product Liability Pursuant to Miss. Code Ann. §11-1-63, as amended*

26. The Auger System was defective because it deviated in a material way from Defendants Grain Systems' and GSI's specifications or from otherwise identical units manufactured to the same manufacturing specifications by:

> (a) Failing to provide the appropriate permanent guards/grates above the floor, round tube, under floor unload auger as required by general engineering standards;
>
> (b) Failing to provide the appropriate fixed and/or portable emergency stop buttons, pull cords, limit switches, or other similar emergency stop devices near the Auger System in the immediate vicinity of those using the same as required by general engineering standards; and
>
> (c) Failing to make the inside of Grain Bin 16 inaccessible when in operation by the use of interlocks on the door.

27. The Auger System was defective in that at the time the product left the control of Defendants Grain Systems and GSI it failed to contain adequate warnings and appropriate instructions for the assembly and operation of the Auger System by:

> (a) Failing to provide the proper directions, instructions, and schematics

7

        directing how to work around the Auger System;

   (b)   Failing to warn by a statement on Grain Bin 16 of the danger encountered if one entered while in operation; and

   (c)   Failing to warn of the presence of the Auger System below the floor and to avoid any openings in the subfloor of Grain Bin 16.

28. The Auger System was defective in that at the time the product left the control of Defendants Grain Systems and GSI in that the Auger System was inadequately designed and constructed in a manner rendering it unreasonably dangerous to those attempting to utilize and operate the Auger System by:

   (a)   Failing to provide the appropriate permanent guards/grates above the floor, round tube, under floor unload auger as required by general engineering standards;

   (b)   Failing to provide the appropriate fixed and/or portable emergency stop buttons, pull cords, limit switches, or other similar emergency stop devices near the Auger System in the immediate vicinity of those using the same as required by general engineering standards; and

   (c)   Failing to make the inside of Grain Bin 16 inaccessible when in operation by the use of interlocks on the door.

29. The Auger System breached an express warranty or failed to conform to other express factual representations upon which the purchaser and subsequent operator justifiably relied in electing to use the Auger System.

30. The defective condition of the Auger System rendered it unreasonably dangerous to Satterfield and its employees, including the Plaintiff, and the defective and unreasonably dangerous condition of the Auger System proximately caused the damages to the Plaintiff for which recovery is sought.

8

## THE CLAIMS AGAINST DEFENDANTS REED-JOSEPH AND JOHN DOES 1-5

*Count One - Negligence*

31. Defendants Reed-Joseph and John Does 1-5 were authorized agents of Defendants Grain Systems and GSI for the installation of grain bins.

32. During the 1970s, Defendants Reed-Joseph and John Does 1-5 installed the Auger System in Grain Bin 16 on the Subject Property. In doing so, Defendants Reed-Joseph and John Does 1-5 promised, warranted, and represented to the then land owner that the Auger System was free from defects, and as installed would correctly and safely transfer grain, but said Defendants negligently supplied, delivered and installed the Auger System to the landowner by:

(a) Failing to provide appropriate fixed guards/grates on the floor above the round tube, under floor unloading auger as required by general engineering standards;

(b) Failing to provide the appropriate fixed and/or portable emergency stop buttons, pull cords, limit switches, or other similar emergency stop devices near the Auger System within access of those using the same as required by general engineering standards;

(c) Failing to provide the Auger System with interlocks, which would disable the Auger System if the floor grates were not fastened in place;

(d) Failing to provide the proper directions, instructions, and warnings as to the safe operation of the Auger System;

(e) Failing to make the inside of Grain Bin 16 inaccessible when in operation by the use of interlocks on the door;

(f) Failing to warn by a statement on Grain Bin 16 of the danger encountered if one entered while in operation;

(g) Failing to warn of the presence of the under floor unloading auger immediately below the floor of Grain Bin 16 and to avoid any openings in the subfloor of Grain Bin 16; and

9

(h)   Failure to comply with state and federal regulations and/or laws.

33. Defendants Reed-Joseph and John Does 1-5 owed a duty to the Plaintiff to install the Auger System free from defects, but rather, negligently and carelessly failed to do so as stated in the paragraph above.

34. As a direct and proximate result of this carelessness and negligence, the Plaintiff has suffered damages as set forth below.

## THE CLAIMS AGAINST DEFENDANTS TULIP AND TENSAS

### *Count One - Negligence*

35. At all times mentioned herein, Defendants Tulip and Tensas owned seven acres, more or less, commonly known as the "Dahomey Bin Site" in the First Judicial District of Bolivar County, Mississippi (herein and hereinafter above "Subject Property"). Improvements thereon include nine grain bins, conveyors, motors, a dump pit, and other equipment used in the storage of grain, including Grain Bin 16 where the incident in question occurred (herein and hereinafter above "Grain Bin 16").

36. Defendants Tulip and Tensas rented Grain Bin 16 to Satterfield, pursuant to the Grain Bin Lease, dated January 1, 2019, that is attached hereto as Exhibit "A".

37. At the inception of the tenancy, Defendants Tulip and Tensas provided in dangerous and defective condition an unloading Auger System in Grain Bin 16 which:

(a)   Failing to provide appropriate fixed guards/grates on the floor above the round tube, under floor unloading auger as required by general engineering standards;

(b)   Failing to provide the appropriate fixed and/or portable emergency stop buttons, pull cords, limit switches, or other similar emergency stop devices near the Auger System within access of those using the same as required by general engineering standards;

10

(c) Failing to provide the Auger System with interlocks, which would disable the Auger System if the floor grates were not fastened in place;

(d) Failing to provide the proper directions, instructions, and warnings as to the safe operation of the Auger System;

(e) Failing to make the inside of Grain Bin 16 inaccessible when in operation by the use of interlocks on the door;

(f) Failing to warn by a statement on Grain Bin 16 of the danger encountered if one entered while in operation;

(g) Failing to warn of the presence of the under floor unloading auger immediately below the floor of Grain Bin 16 and to avoid any openings in the subfloor of Grain Bin 16; and

(h) Failure to comply with state and federal regulations and/or laws.

38. Therefore, Defendants Tulip and Tensas were negligent in maintaining and providing by lease Grain Bin 16 in an unreasonably dangerous or defective condition, and was thus negligent, for the reasons stated in the paragraph above.

39. Such negligence by Defendants Tulip and Tensas was a proximate cause of the Plaintiff's injuries and damages incidental thereto.

## DAMAGES

40. As a direct and proximate result of the actions of the Defendants as aforesaid, the Plaintiff has sustained the following damages:

(a) All medical and hospital expenses incurred as a result of his injuries;

(b) Any and all future medical expenses and prosthetic which are reasonably certain to be incurred;

(c) Permanent impairment and physical disability, past, present, and future;

(d) Mental and emotional distress and suffering, past, present, and future;

11

(e) Physical pain and suffering, past, present, and future;

(f) Loss of enjoyment of life;

(g) Disability;

(h) Loss of wage earning capacity;

(i) Lost wages to date of trial; and

(j) All other losses arising from the aforesaid incident.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, Willie R. Clention, demands judgment of, from, and against the Defendants, Grain Systems, Inc., GSI Group, Inc., Reed-Joseph International, Inc., Tulip Farms, Inc., Tensas River Farms III, LLC, and John Doe Corporations 1-5, in an amount exceeding the minimal jurisdiction limits of this Court, plus pre-judgment interest from the date of injury and all costs of Court.

The Plaintiff respectfully demands a trial by jury on all issues so triable.

                              Respectfully submitted,

                              MERKEL & COCKE, P.A.
                              Post Office Box 1388
                              30 Delta Avenue
                              Clarksdale, MS 38614
                              Tele: (662) 627-9641
                              Fax: (662) 627-3592
                              Attorneys for Plaintiff

By: _____
      CHARLES M. MERKEL, JR. (MSB # 2884)
      EDWARD P. CONNELL, JR. (MSB #10647)

## GRAIN BIN LEASE

This lease contract made and entered into this day by and between Tulip Farms Inc., and Tensas River Farms III, LLC, hereinafter referred to as "Lessor's", and Satterfield Farms, a Mississippi general partnership, hereinafter referred to as "Lessee",

WITNESSETH:

Lessor's, for the rental and in consideration of the covenants and agreements hereinafter contained on the part of the Lessee to be paid, kept, and performed, do hereby lease and let to the Lessee nine (9) grain bins, being the grain storage facility located on what is known as the "Dahomey Bin Site" situated in the First Judicial District of Bolivar County, Mississippi, to-wit:

> Seven acres, more or less, of land bounded on the West by a road known as Dahomey Road, on the North by Old Muton Road, on the East by New Cut-Off Ditch, on the South by New Muton Road, commonly known as the "Dahomey Bin Site", and being situated in the Northeast Quarter of the Northwest Quarter of Section 17, Township 21 North, Range 7 West, in the First Judicial District of Bolivar County, Mississippi, together with all Improvements thereupon situated and thereunto belonging, including 9 grain bins, conveyors, motors, dump pit, and other equipment used in the storage of grain.

The period of this lease contract is for twelve (12) months, beginning August 15, 2018 – August 14, 2019.

[redacted]

Lessee will maintain and keep said facilities in a good and operating condition at its own expense and at the termination of said lease period render up said facilities in the same condition in which it was received, reasonable wear and tear only, accepted.

Lessors shall have the right to enter upon said premises and enter said grain bins and others storage facilities on said premises for the purpose of inspecting the conditions of the buildings and equipment at all times during regular business hours.

Lessee agrees that during the period of this lease contract it will keep the roadways on the above described premises in an operating condition, and at the termination of said lease, render up said roadways in the same condition as received, reasonable wear and tear only, excepted.

Lessee shall not assign this lease contract or any rights hereunder or sublease any part of the above described premises without the express written consent of the Lessor.



Lessee shall be responsible for the general maintenance and upkeep of the premises surrounding the bins, roadways, and other improvements located on said premises including, but not limited to, keeping any buildings, fences, and other improvements in good repair and keeping the grass mowed on a regular basis and the premises free of trash, debris, spoiled grain, and other waste.

Lessee recognizes that Lessor's intend for the use and operation of the leased premises to be in full compliance with all environmental laws, rules, and regulations. Lessee agrees not to bury or burn on the leased premises any rubbish, trash, drums, containers, including but not limited to, containers/drums/cartons used for farm chemicals or fertilizer. Lessee agrees to dispose of all farm chemical containers/drums/cartons off the leased premises in a dump site approved by appropriate state and federal agencies.

Lessee covenants and agrees it will protect and save and keep the Lessor's and the beneficial owner or owners of the leased premises forever harmless and indemnified against and from any penalty or damage or charge imposed for any violation of the laws or ordinances, whether occasioned by the neglect of Lessee or those acting under Lessee, and that Lessee will at all times protect, indemnify, and save and keep harmless the Lessor's and the beneficial owner or owners against and from any and all loss, cost, damage, or expense arising out of any failure of Lessee in any respect to comply with and perform all of the requirements and provisions hereof. The Lessor's shall not be liable for any damage occasioned by failure to keep said premises in repair, nor for any damage arising from any accident or neglect whatsoever of Lessee, its agents, or employees, or any owners or occupants of adjacent or contiguous property.

Lessee covenants and agrees that at all times during the term of this lease contract it will procure, maintain, and keep in full force and effect, an insurance policy in a good and responsible insurance company satisfactory to Lessor's, insuring Lessor's against claims for damages or for personal injury or death or injury to property claimed to have been caused on or about the leased premises or on or about the roadways or lands upon which they abut, or to have been caused by reason of any negligence in the care, maintenance, or supervision of the leased premises or any part thereof (commonly called public liability insurance), with a single limit of not less than $1,000,000.00 as to claims for bodily injury arising from any one accident or occurrence, and insuring Lessee's contractual obligation under the preceding paragraph above. Said public liability insurance policy or a certificate of insurance thereon shall be issued to and held by Lessor's.

Lessee shall comply with the Worker's Compensation Act of the State of Mississippi and shall furnish unto the Lessor's evidence of Lessee's compliance and shall carry full and adequate worker's compensation insurance on all of Lessee's workers and furnish evidence thereof to Lessor's.

Lessor's agrees to pay and keep current all ad valorem taxes assessed against the above described premises during the entire period of this lease contract.

It is understood by the parties hereto that Lessor's will carry casualty insurance only on the grain bins and other structures located on the above described premises and that Lessee will be responsible for maintaining insurance on any and all contents stored in the grain bins and other structures located on the above described premises during the period of this lease contract.

It is understood and agreed by and between the parties hereto that Lessee shall maintain the electrical, gas, and water services to the above described premises in its name and be responsible for the charges therefore.

Lessee promises and agrees to faithfully and fully perform all of the conditions and requirements of this lease contract and to pay rent promptly when due and, in the event of failure to pay said rent at maturity or to fully perform any and all of the conditions hereof, this contract may, at the option of the Lessor's, be cancelled and the same shall become null and void the Lessee agrees to deliver immediately the possession of the premises to the Lessor's and, if the same is placed in the hands of an attorney at law for collection, Lessee agrees to pay for collection, including reasonable attorney's fees, court cost, and all other costs of collection. All rents that are payable to the Lessor according to the terms hereof shall be paid at the office of Dahomey Plantation, Benoit, Mississippi, or at any other place as the Lessor's from time to time designate in writing.

WITNESS the signatures of the parties hereto on this, the 1st day of Jan, 2019.

SATTERFIELD FARMS, a Mississippi
General Partnership

BY: _____
SATTERFIELD FARMS, a Mississippi
General Partnership

LESSEE

TULIP FARMS, INC.

BY: _____
REBECCA BOYCE WINEMILLER,
President

TENSAS RIVER FARMS III, LLC

BY: _____
Rebecca Winemiller, Member